Cheshire,
No. 5488.

### American Federation of State &c. Employees

*v.*

### Keene & a.

Argued December 6, 1966.
Decided March 29, 1967.

*Broderick, Craig, Bourque & Costakis ( Mr. William H. Craig orally )* for the plaintiff.

*Eric J. Kromphold, Jr.,* city solicitor ( by brief and orally ), for the defendants.

LAMPRON, J. The right of public employees to organize and that of public employees to enter into collective bargaining agreements with them or their representatives are not as clearly established as is the case in private industry. Cornell, Collective Bargaining by Public Employee Groups, 107 U. Pa. L. Rev. 43 ( 1958-59 ); Weisenfeld, Public Employees — First or Second Class Citizens, 16 Lab. L. J. 685 ( 1965 ); Mysliwiec, Municipal Employees' Unions: The Climb Up Labor's Ladder, 4 Duquesne U. L. Rev. 137 ( 1965 ). However the right of public employees to join or become members of labor unions is becoming increasingly recognized. Annot. 31 A.L.R. 2d 1142, 1149, *s.* 3.

In 1955 ( Laws 1955, ch. 255, now RSA 31:3 ( supp ) ), our Legislature removed the doubt previously existing as to the power of municipalities to enter into a collective bargaining contract with a labor union. *Manchester* v. *Guild,* 100 N. H. 507, 511. However the rights which flow to public employees from such authorization and the nature and scope of the contract which can be entered into between a public employer and its employees as a result of this legislation have not been precisely defined. *Manchester* v. *Guild, supra.*

The Trial Court made the following findings which are warranted by the evidence:

" 4. During the month of July, 1964, agents of the plaintiff with the express consent of the City Manager [ Frank R. Saia ] and the Superintendent [ Robert G. Shaw ] circulated among the employees of the Public Works Department ( while said employees were not on city time ), and obtained the consent and agreement of a majority of said employees to become members of the plaintiff union.

" 5. On August 13, 1964 an election was held under the supervision of the State of New Hampshire Department of Labor. Prior to said election Robert G. Shaw, Superintendent of Public Works for the City of Keene, agreed in writing . . . to accept the decision of the Deputy Labor Commissioner as to the outcome of said election [ whether the plaintiff shall be the bargaining agent for the employees of the Department of Public Works ]; and

" 6. This agreement was signed by the defendant Shaw in the

presence of, and at the express direction of the defendant Saia, who was acting . . . as City Manager."

The Trial Court further found that at this election, which was certified in writing to have been "fairly conducted . . . 52 out of 55 who were eligible to vote had cast their votes and 39 voted for the plaintiff."

The first question transferred is the following: "As a result of said election, did the plaintiff become the bargaining agent for the employees of the Department of Public Works, except supervisory employees, after said election"?

Laws 1955, ch. 255 (now RSA 31:3 (supp)), added to the general powers of towns the power to "recognize unions of employees and make and enter into collective bargaining contracts with such unions." In cities this power resides in the mayor and city council unless the city charter provides otherwise. RSA 44:2,3; 3 Antieau, Mun. Corp. Law, s. 22.07, p. 234. The Keene charter provides that "the administration of the fiscal, prudential, municipal and other affairs of the city, and the government thereof, shall be vested in a principal officer, to be called the mayor, and a city council." Keene, Charter, s. 3.

We hold that the power to recognize unions of employees and to make contracts with such unions granted by Laws 1955, ch. 255 is vested in the mayor and city council of Keene. It is unnecessary to decide whether this power can be or was delegated by them to the city manager or the superintendent of public works as the Trial Court made no finding or ruling that a delegation was made and the record before us does not require such a finding or ruling. Consequently the mayor and city council are not under obligation to recognize and negotiate with the plaintiff as the bargaining agent of these employees unless they choose to do so.

However the city manager is "the chief executive officer of the city" (RSA 49:1) and has "general supervision of the property or business affairs of the city." RSA 49:3. He has "charge, control, and supervision, subject to direction of the governing body," of the public works department of Keene. RSA 49:3 VII. He appoints a "superintendent of public works" who operates "under the direction and control of the city manager." Keene, Ordinances, ch. 12, ss. 1, 2. We hold that these officials acted

within their authority when they permitted plaintiff's agents to approach the employees and allowed the holding of an election and agreed to accept the result of the election as counted and tabulated by the Deputy Labor Commissioner. It follows that the answer to the first question transferred is yes. Consequently the plaintiff will be the bargaining agent of these employees if and when the mayor and city council act to recognize a union of these employees or to enter into a collective bargaining agreement with them.

The second question transferred is the following: "Was the City employee Edward Litzenberger wrongfully dismissed because of his union activities"?

The Trial Court found that after the election, the employees of the department of public works proceeded to organize the local by electing officers. Among the officers elected was Edward Litzenberger, who was elected as steward. On August 21, 1964, three days thereafter, he was summarily separated from work. The Court further found that "It is more probable than otherwise that . . . [he] was discharged from work because of his union activities."

The plaintiff maintains that the fact that a meeting of the public works committee of the city was held at which Litzenberger sought to discuss his dismissal constituted a ratification of the agreement to recognize the union as bargaining agent, and made his dismissal wrongful. We cannot agree with this contention as only the mayor and city council had the authority to enter into or ratify such an agreement.

Plaintiff argues further that the city manager had the sole authority to fire Litzenberger because RSA 49:4 II gives him the power to appoint and remove all subordinate employees under his control. Assuming the argument to be valid the failure of the manager to repudiate the action of the superintendent who did the firing would constitute a ratification of the dismissal. The latter is under "the direction and control of the city manager." Keene, Ordinances, ch. 12, *s*. 2 ( 1964 ).

"The power to appoint officers or employees of a municipal corporation carries with it the power of removal of such employees at the municipality's pleasure unless the power of removal is restricted by statutory law." 3 Antieau, Mun. Corp.

Law, *s.* 22.22, *p.* 288.31; 31 Am. Jur., Labor, *s.* 8, *p.* 390.
No such law has been called to our attention. The answer to the second question is no.

*Remanded.*

BLANDIN, J., sat at argument but took no part in the decision; the others concurred.