STEFAN F. KOPPI, Plaintiff-Appellant, v. BOARD OF CONTROL OF WHITESIDE AREA VOCATIONAL CENTER *et al.*, Defendants-Appellees.

Third District   No. 3—84—0488

Opinion filed May 31, 1985.

BARRY, J., dissenting.

Stephen G. Katz, of Kelly, Haus & Katz, of Madison, Wisconsin, for appellant.

Ole Bly Pace III, of Ward, Murray, Pace & Johnson, P.C., of Sterling, for appellees.

JUSTICE WOMBACHER delivered the opinion of the court:

This case comes on appeal by plaintiff, Stefan F. Koppi, from orders dismissing his complaint. We affirm.

Koppi was employed by defendant Whiteside Area Vocational Center (WAVC). WAVC is a joint educational program created to provide vocational education for all the participating defendant school districts. Koppi was honorably terminated at the end of the 1981-82 school year. This was due to a reduction in force at WAVC.

Koppi had earned contractual continued service (sometimes called, as here, tenure) with WAVC and claims to have been entitled to an open position that existed in one of the member school districts after his dismissal. He makes this claim on the basis of a rescinded policy that WAVC had in effect during part of the 1981-82 school year. The rescinded policy stated that WAVC-tenured teachers were to have equivalent tenure in participating districts. On February 3, 1982, the

defendant board of control adopted a policy which eliminated the "super-tenure" provision. Thus, WAVC-tenured employees held tenure with WAVC only, not the member school districts.

Koppi's suit sought *mandamus*, an injunction, declaratory judgment, and monetary damages. On defendant's motion, the trial court dismissed Koppi's amended complaint. Koppi then brought this appeal, asking this court to reverse the trial court.

The pertinent statute is in the School Code, the last paragraph of Section 24—11:

> "The employment of any teacher in a special education program authorized by Section 14—1.01 through 14—14.04 *or a joint educational program established under Section 10—22.31a* shall be under this and succeeding Sections of this Article, and such employment shall be deemed a continuation of the previous employment of such teacher in any of the participating districts, regardless of the participation of other districts in the program. Any teacher employed as a full-time teacher in a special education program in which 2 or more school districts participate for a probationary period of 2 consecutive years shall enter upon contractual continued service in each of the participating districts, subject to this and the succeeding Sections of this Article, and in the event of the termination of the program shall be eligible for any vacant position in any of such districts for which he is qualified." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 122, par. 24—11.

The legislative history shows that the emphasized language above was added in the 1968 amendment to the section. The second sentence was not amended. The legislature's intention could not be more clear. In amending the statute, the legislature provided not only for tenure within special education programs, but also for such programs as WAVC. However, the "super-tenure" rights that existed for special education teachers was not expanded. The legislature recognized a need for protecting special education teachers, thus creating the necessary difference from other joint program teachers.

■ Further, grants of tenure rights are to be strictly construed. (*Johnson v. Board of Education* (1981), 85 Ill. 2d 338, 423 N.E.2d 903.) We will therefore not interpret the clear language of the statute to mean anything other than what is written. This is not to say that a teacher has no tenure rights within a cooperative. We hold only that non-special-education teachers are not to be afforded the "super-tenure" protection of section 24—11.

■ The other issue raised by Koppi is whether the policy change

was arbitrary and capricious. Koppi claims that the change, which was made in February, altered his contract with WAVC. We find that the change was not arbitrary and capricious, nor did it alter Koppi's contract. The prior policy granting "super-tenure" was not a legitimate exercise of the powers of the board of control.

The controlling statute is clear. "A board of control composed of one member from each cooperating district *** will set policy *for the cooperative.*" (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 122, par. 3—15.14.) Again, the legislature could not have been clearer. When read with section 24—11, the board of control can give tenure to teachers within the cooperative program only, not member districts. The legislature granted "super-tenure" to special education teachers, not other teachers, and a school board is the only entity that can grant tenure within its district.

Thus, a fair reading of the applicable statutes shows that the board of control had created an *ultra vires* policy. When it amended the policy in question, it was conforming it to the mandates of the statute. Thus, the change was not arbitrary and capricious. Also, if Koppi's contract with the board included the provision, that portion of the contract was void, as the provision was *ultra vires*. The board cannot give what it is not empowered to; thus, the statutory language applies—the language of the new policy. We find, therefore, that Koppi's contract was not altered by the policy change.

■ Koppi's final contention, argued in briefs only, was that he was entitled to damages under 42 U.S.C. sec. 1983, as the change in policy deprived him of a protected property interest. The existence of such a constitutionally protected interest is determined by reference to State law. (See *McElearney v. University of Illinois* (7th Cir. 1979), 612 F.2d 285, 289, and citations therein.) We hold that the old policy of the board did not create a protected property interest. As we held above, that policy was void. The statutory policy controlled. Koppi had no protected property interest in further employment by the board or any member district. Nor do we see any indicia of custom, policy, etc., that would bring this case within the purview of the Federal statute. Therefore, the allegation of a violation and the request for damages were properly denied.

For the foregoing reasons, we affirm the circuit court of Whiteside County.

Affirmed.

HEIPLE, P.J., concurs.

JUSTICE BARRY, dissenting:

I must dissent from the decision of the majority in this case, because I interpret section 24—11 of the School Code to require a reversal of the trial court's dismissal order.

Before 1965, section 10—22.31 of the School Code authorized school boards to enter into joint agreements with other school boards to provide special education programs and facilities, as follows:

"Sec. 10—22.31. Special education. To enter into joint agreements with other school boards to establish programs for children of the type described in Section 14—1, to provide the needed special educational facilities, and to employ a director and other professional workers for such program. The director may be employed by one district and such district shall be reimbursed by other districts that are parties to the agreement on a mutually agreed basis. Such agreements may provide that one district may supply professional workers for a joint program conducted in another district." Ill. Rev. Stat. 1963, ch. 122, par. 10—22.31.

The School Code also provided for teachers employed in such special education programs to have tenure rights (contractual continued service status) in each of the school districts participating in the joint agreement. The last paragraph of section 24—11 of the School Code (Ill. Rev. Stat. 1963, ch. 122, par. 24—11) provided:

"The employment of any teacher in a special education program authorized by Sections 14—1 to 14—12, inclusive, shall be under the provisions of this and the succeeding sections of this Article, and such employment shall be deemed a continuation of the previous employment of such teacher in any of the participating districts, regardless of the participation of other districts in the special education program. Any teacher employed as a full-time teacher in a special education program in which 2 or more school districts participate for a probationary period of 2 consecutive years shall enter upon contractual continued service in each of the participating districts, subject to the provisions of this and the succeeding provisions of this Article, and in the event of the termination of the program shall be eligible for any vacant position in any of such districts for which he is qualified."

In 1965, the Illinois legislature also authorized school boards to enter into joint agreements to establish any type of educational program which a district might establish individually, by adding the following section to the School Code:

"To enter into joint agreements with other school boards to establish any type of educational program which any district may establish individually, to provide the needed educational facilities and to employ a director and other professional workers for such program. The director and other professional workers may be employed by one district which shall be reimbursed on a mutually agreed basis by other districts that are parties to the joint agreement. Such agreements may provide that one district may supply professional workers for a joint program conducted in another district." Ill. Rev. Stat. 1965, ch. 122, par. 10—22.31a.

Then, at the 1967 session of the legislature, section 24—11 was amended by including joint educational programs established under section 10—22.31a within the tenure provisions of the School Code. Section 24—11, as amended, is as follows:

"The employment of any teacher in a special education program authorized by Sections 14—1.01 to 14—14.01, inclusive, or a joint educational program established under Section 10 – 22.31a, shall be under the provisions of this and the succeeding sections of this Article, and such employment shall be deemed a continuation of the previous employment of such teacher in any of the participating districts, regardless of the participation of other districts in the program. Any teacher employed as a full-time teacher in a special education program in which 2 or more school districts participate for a probationary period of 2 consecutive years shall enter upon contractual continued service in each of the participating districts, subject to the provisions of this and the succeeding provisions of this Article, and in the event of the termination of the program shall be eligible for any vacant position in any of such districts for which he is qualified." (Amendment underlined.) (Ill. Rev. Stat. 1967, ch. 122, par. 24—11.)

The resulting statutory law thus expressly provided that the employment of any teachers in a joint program "shall be under the provisions of this [section 24—11] and the succeeding sections of this Article [article 24]" of the School Code.

When the legislative activity and the chronology of these amendments are considered, it seems clear that the provision for multiple district tenure in section 24—11 was enacted and reenacted so that, firstly, special education programs and then all joint programs created under sections 10—22.31 and 10—22.31a could obtain experienced teachers by treating joint-program employment as a continuation of

previous employment for tenure purposes, and also by recognizing tenure rights in all participating districts for the teachers so employed. The plain language of section 24—11, as amended in 1967, indicates an intention to provide teachers employed by all types of joint education programs the same rights as teachers employed by the oldest type of joint program—the special education programs. "Such employment" in the first sentence of the said 1967 amendment last quoted above most certainly referred to both special and joint educational programs.

I fail to grasp the logic of construing section 24—11 so as to favor employees of special education programs over employees of other joint programs, such as the vocational education program involved here. I have no doubt the legislature intended to add rather than to limit. Further, I fail to see the necessity of amending by exact repetition every sentence in section 24—11, as the majority position infers, when in fact the plain language of the first sentence as amended made *all* provisions of section 24—11 applicable to joint education programs.

As I have indicated, I would reverse the dismissal order, and remand this cause for further proceedings.