PAUL AKEN *et al.*, Plaintiffs-Appellants, v. THE BOARD OF CONTROL OF LAKE COUNTY AREA VOCATIONAL CENTER, Defendant-Appellee.

Second District   No. 2—92—0056

Opinion filed November 25, 1992.

Mildred F. Haggerty, of Haggerty, Koenig & Hill, Chartered, of Chicago, for appellants.

Alan M. Kaplan, of Brydges, Riseborough, Morris, Franke & Miller, of Waukegan, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiffs, Paul Aken and Dawn Brumm, appeal from the circuit court's order of December 16, 1991, dismissing their complaint for declaratory judgment and for injunctive relief. The plaintiffs were employees of a cooperative vocational education program under the control of defendant, the Board of Control of Lake County Area Vocational Center (the Board or defendant). Although plaintiffs were tenured teachers of the defendant Board, they were honorably dismissed from employment due to a reduction in force. In their complaint, plaintiffs sought a declaration of their tenure rights under section 24–11 of the School Code (Code) (Ill. Rev. Stat. 1991, ch. 122, par. 24–11).

Plaintiffs asserted below that under section 24–11, they had "bumping" rights or "super-tenure" in the member school districts participating in the joint education program. Plaintiffs also argued that there was no rational basis to treat them differently from special education teachers who were granted "super-tenure" rights under section 24–11 of the Code.

On appeal, plaintiffs again maintain that (1) they have "super-tenure" rights in the member school districts and that (2) a contrary construction of the statute would amount to an unconstitutional classification failing the "rational basis" test. We believe that both of these arguments are contrary to the holding of *Koppi v. Board of Control of Whiteside Area Vocational Center* (1985), 133 Ill. App. 3d 591. We therefore disagree with plaintiffs, and we affirm the judgment of dismissal.

The complaint states that plaintiffs were employed by defendant prior to July 1, 1987, and had attained the status of contractual continued service (tenure) employees with defendant. (Plaintiffs state in their appellate brief that teachers employed by the Lake County Area Vocational Center are not employees of any of the separate participating school districts.) The Board is authorized by law to operate the Lake County Area Vocational Center (Center). The Center's purpose is to provide vocational education to secondary school students; it has a cooperative program involving 18 participating school districts located in Lake County. The Board is made up of the superintendents of each participating district and a representative of the regional superintendent.

In March 1991, plaintiffs were given notice of honorable dismissal by the Board due to a reduction in the number of teachers employed by the Board. The plaintiffs requested the Board to place them in any position in the participating districts of the Center for which they were legally qualified by length of continuing service over any teacher currently assigned to the position. According to plaintiffs, the Board responded that, under section 24—11, plaintiffs were not legally entitled to be placed in positions in participating districts, regardless of their qualifications and seniority. Plaintiffs sought a declaration that they should be placed in positions in the participating districts by virtue of their tenure and seniority and sought an injunction prohibiting defendant from refusing to provide information concerning available positions.

Section 24—11 of the Code provides in pertinent part:

"The employment of any teacher in a program of a special education joint agreement established under Section 3—15.14, 10—22.31 or 10—22.31a shall be under this and succeeding Sections of this Article. ***

Any teacher employed after July 1, 1987 as a full-time teacher in a program of a special education joint agreement, whether the program is operated by the joint agreement or a member district on behalf of the joint agreement, for a probationary period of two consecutive years shall enter upon contractual continued service in all of the programs conducted by such joint agreement which the teacher is legally qualified to hold. In the event of a reduction in the number of programs or positions in the joint agreement, the teacher on contractual continued service shall be eligible for employment in the joint agreement programs for which the teacher is legally qualified in order of greater length of continuing service in the joint agreement unless an alternative method of determining the sequence of dismissal is established in a collective bargaining agreement. In the event of the dissolution of a joint agreement, the teacher on contractual continued service who is legally qualified shall be assigned to any comparable position in a member district currently held by a teacher who has not entered upon contractual continued service or held by a teacher who has entered upon contractual continued service with shorter length of contractual continued service.

* * *

The employment of any teacher in a special education program authorized by Section 14—1.01 through 14—14.01, or a

joint educational program established under Section 10—23.31a, shall be under this and the succeeding Sections of this Article, and such employment shall be deemed a continuation of the previous employment of such teacher in any of the participating districts, regardless of the participation of other districts in the program. Any teacher employed as a full-time teacher in a special education program prior to September 23, 1987 in which 2 or more school districts participate for a probationary period of 2 consecutive years shall enter upon contractual continued service in each of the participating districts, subject to this and the succeeding Sections of this Article, and in the event of the termination of the program shall be eligible for any vacant position in any of such districts for which such teacher is qualified." Ill. Rev. Stat. 1991, ch. 122, par. 24—11.

Plaintiffs first argue that the above-cited provisions grant the same tenure protections to teachers in all types of joint educational agreements. Plaintiffs assert that the section references in the first above-cited paragraph to special education joint agreements (section 10—22.31), in connection with references to cooperative educational programs (section 3—15.14) and joint educational programs (section 10—22.31), show that the legislature intended to *define* special educational joint agreements as including all types of cooperative educational programs. This is a strained construction of that paragraph. The legislature was merely setting forth the statutes under which each type of joint agreement is established and governed. All joint agreements are not subsets of special education joint agreements, as plaintiffs would argue. Rather, the opposite is true: special education joint agreements are species of joint agreements. Special education programs differ significantly from other types of programs and are intended for particular types of students, namely, children who are handicapped or have learning disabilities. See Ill. Rev. Stat. 1991, ch. 122, par. 14—1.01 *et seq.*

Teachers such as plaintiffs do have tenure rights in the vocational education program as a continuation of their previous employment in the individual school districts. This is provided for in the first sentence of the last cited paragraph above of section 24—11. However, the second sentence of that paragraph provides for "super-tenure," that is, tenure in the participating school districts under limited circumstances, only for special education teachers (see *Koppi v. Board of Control of Whiteside Area Vocational Center* (1985), 133 Ill. App. 3d 591, 593) and subject to the date restrictions now included in the statute. In granting "super-tenure" within participating school districts,

the second sentence refers only to special education program teachers and makes no mention of other types of teachers. We believe that *Koppi* is controlling on this point, and we adopt the distinction made in *Koppi* between special education teachers and other types of teachers in construing this statute. *Koppi*, 133 Ill. App. 3d at 593.

■ We agree with *Koppi* that the legislature intended to treat special education teachers differently from other joint program teachers. This conclusion is bolstered by the fact that the legislature made additional distinctions regarding the tenure rights of special education teachers when it added the second-cited paragraph which became effective in 1987 after *Koppi* was decided; the September 23, 1987, limitation was also added by the same amendment. (See Pub. Act 85—760 §2, eff. Sept. 23, 1987.) The detailed tenure rights of special education teachers were made applicable to teachers hired after July 1, 1987, in the event of a reduction in the number of teachers in a special educational joint agreement or in the event of the dissolution of such an agreement. Grants of tenure rights are to be strictly construed. (*Johnson v. Board of Education of Decatur School District No. 61* (1981), 85 Ill. 2d 338, 344.) We cannot interpret the clear language of these provisions to mean anything other than what they state. (*Koppi*, 133 Ill. App. 3d at 593.) It is for the legislature to enact different provisions if it disagrees with our interpretation of these provisions.

Plaintiffs also contend that, if the statute is construed to afford special tenure protection to special education teachers and not to other teachers in joint educational programs such as plaintiffs, this would render the statute unconstitutional as a violation of equal protection guarantees. Plaintiffs urge that such a distinction has no rational basis.

■ We believe that, in granting tenure rights, the legislature could properly distinguish between special education teachers and other classes of teachers. A legislative classification does not violate equal protection guarantees if it has a rational basis, that is, it rationally advances reasonable and identifiable governmental objectives. (*Schweiker v. Wilson* (1981), 450 U.S. 221, 235, 67 L. Ed. 2d 186, 198, 101 S. Ct. 1074, 1083.) Where there is no suspect classification such as race or ethnic origin, the rational relationship test applies. (*Barbosa v. Committee on Accountancy* (1988), 171 Ill. App. 3d 782, 786.) In order to be constitutional, a classification is not required to be scientific, logical, or consistent if it is reasonably adapted to secure the purpose for which it is intended and is not purely arbitrary. *Barbosa*, 171 Ill. App. 3d at 787.

■ In addition to general educational requirements, special education teachers have highly particularized training, experience and certification requirements not required of other teachers. (See, *e.g.*, Ill. Rev. Stat. 1991, ch. 122, par. 14—9.01; 23 Ill. Adm. Code §25.43 (1991).) They must be prepared by education, temperament and experience to meet the specific educational needs of children with various disabilities. In order to attract and retain highly qualified professionals to meet the particular needs of these children, the legislature undoubtedly saw fit to offer special protection to this unique class of teachers. We believe that the classification rationally advances reasonable and identifiable governmental objectives.

For the foregoing reasons, we affirm the judgment of the circuit court of Lake County.

Affirmed.

DUNN AND DOYLE, JJ., concur.